UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHARLES B. GILL, SR.,

    Plaintiff,

v.             Case No. 18-cv-540-pp

ARAMARK CORRECTIONAL SERVICES,
THOMAS HARE, OUTAGAMIE COUNTY JAIL,
LT. VERHEYEN, MICHELLE HARE, and
JENNY DOE, District Manager of Aramark,

    Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), SCREENING COMPLAINT (DKT. NO. 1), DENYING AS MOOT PLAINTFF'S MOTION FOR EXTENSION OF TIME TO PAY INITIAL PARTIAL FILING FEE (DKT. NO. 7), DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DKT. NO. 10), AND DIRECTING PLAINTIFF TO FILE AN AMENDED COMPLAINT BY OCTOBER 12, 2018**

---

  In January 2018, the plaintiff was in custody at the Outagamie County Jail. Representing himself, he filed a complaint under 42 U.S.C. §1983 alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, screens his complaint, dkt. no. 1, and resolves his motion for preliminary injunction, dkt. no. 10.

**I. Motion for Leave to Proceed without Prepayment of the Filing Fee (Dkt. No. 2)**

  The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows

1

a court to give an incarcerated plaintiff the ability to proceed with his case without prepaying the civil case filing fee, if he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On April 10, 2018, the court ordered the plaintiff to pay an initial partial filing fee of $1.02. Dkt. No. 4. The court received that fee on April 25, 2018. The court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee, and will allow him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

The court will deny as moot the plaintiff's motion for extension of time to pay the initial partial filing fee because he has already paid it. Dkt. No. 7.

## II. Screening the Plaintiff's Complaint

  A.    *Federal Screening Standard*

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim for which a federal court can grant relief, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that: 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) the person who deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   *The Plaintiff's Allegations*

The plaintiff alleged that at the time of the events in the complaint, he was an inmate at the Outagamie County Jail in Appleton, Wisconsin. Dkt. No. 1 at 3. In the original complaint, he sued Aramark, Thomas "Doe," the Outagamie Jail, Lt. Verheyen and Lt. Wirtz. Dkt. No. 1 at 1. Not quite two weeks later, the plaintiff filed a document titled "Amendments," in which he stated that he would like to amend the list of defendants. Dkt. No. 6. The plaintiff asked to remove Lieutenant Brian Wirtz as a defendant. Id. He asked to add the following individuals as defendants: (1) Jenny Doe, district manager of Aramark, and (2) Michelle Hare, kitchen worker for Aramark. Id. Finally, the

3

plaintiff asked to change defendant "Thomas Doe" to Thomas Hare (whom he identifies as a kitchen worker for Aramark). Id. The clerk's office has updated the docket to reflect those changes, and the court screens the case for claims against the following defendants: Outagamie County Jail, Aramark, Thomas Hare, Lt. Verheyen, Jenny Doe (Aramark manager) and Michelle Hare (Aramark kitchen worker).

The complaint states that the plaintiff is a Muslim, and that both Aramark and the jail recognize that. Dkt. No. 1 at 3. He alleges that in January 2018, he asked the jail for a Halal diet. Id. The plaintiff says that Aramark sent him a vegan tray, and that both Aramark workers and jail officers said that "a vegan tray does not violate a Halal meal." Id. The plaintiff asserts that he filed a grievance about this, and that a sergeant sustained the grievance. Id. The plaintiff indicates, however, the sergeant said that while Aramark was working to find a solution, the plaintiff's "only option" was a vegan diet. Id. at 3-4.

The plaintiff alleges that on February 13, 2018, Aramark started giving the plaintiff "Halal meat" four times per week, which meant that the plaintiff received seventeen vegan meals weekly, instead of twenty-one. Id. at 4. Three days later, defendant Lt. Verheyen sent the plaintiff a letter stating that he did not think that a vegan diet violated any Halal principles. Id. The plaintiff says that he informed Aramark and the jail that he ate meat and dairy; he also allegedly tried to show Aramark, Lt. Verheyen, and Lt. Wirtz three chapters in the Qur'an that said "for [the plaintiff] to eat meat." Id. The plaintiff states that

4

for "69 days and counting," no one from Aramak or the jail came to look at those chapters. Id.

The plaintiff alleges that defendant Thomas Hare, the kitchen manager for Aramark, never responded to his requests and continued to send him vegan meals. Id. at 4-5. The plaintiff says that the jail did nothing "to stop it." Id. at 5. The plaintiff states that he told many officers that his rights were being violated. Id. He also states that Lt. Wirtz sent him a letter on February 22, 2018, stating, "we are confident that we are neither disrespecting your religion nor violating your rights regarding your requested Halal diet." Id.

The plaintiff alleges that he refused to eat for a week because he did not know "what to do or who to trust," and that he was stressed mentally and emotionally. Id. He states that there was no "Imam/Islamic leader" in the jail, and that the last time the plaintiff had spoken to an Islamic leader was on January 30, 2018 (over two months before he filed his complaint). Id. The jail and Aramark allegedly ignored the plaintiff's request for a "complete Halal diet" and continued to force him to eat primarily a vegan diet. Id. The plaintiff asserts that this put a major burden on him, and that forcing him to adhere to a vegan diet violated his sincere religious beliefs because his religion required him to eat meat. Id.

The plaintiff says that on March 22, 2018, he notified Sgt. Hintze and Lt. Wirtz that the jail and Aramark violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), the First Amendment and the Fourteenth Amendment. Id. Four days later, the plaintiff allegedly wrote to Lt.

Wirtz and Lt. Verheyen, asking them one last time to change his diet from vegan to Halal. Id. He did not receive a response. Id. The plaintiff states that he asked to speak with Megan from the mental health department, because he had become distraught due to the "neglect and deprivation." Id. He asserts that there had been many suicides in the jail, and that he did not want to become another "victim of [the jail's] consistent negligence."[1] Id.

The plaintiff alleges that on March 27 and 28, 2018, Aramark changed his diet without his authorization; he does note that a sergeant corrected this problem. Id. Regardless, the plaintiff alleged that Aramark served the plaintiff eighty-four trays per month, of which fourteen were Halal and sixty-eight were vegan. Id. (The plaintiff doesn't say what the other two trays were.)

For relief, the plaintiff asked for (1) Halal meals until he was released, (2) declaratory relief in that Aramark and the jail violated RLUIPA by not providing him with constant Halal meals or kosher meals for over sixty-nine days, (3) declaratory relief in that Aramark and the jail violated the Equal Protection Clause by intentionally denying the plaintiff Halal meals or an alternative of kosher meals for over 69 days, (4) declaratory relief in that Aramark and the jail violated the Establishment Clause of the First Amendment, (5) declaratory relief in that Aramark and the jail violated the Free Exercise Clause of the First Amendment and (6) punitive and compensatory damages. Id. at 6-7.

---

[1] The plaintiff did eventually speak with someone from mental health on March 29, 2018. Dkt. No. 1 at 5.

6

C. *The Court's Analysis*

   1. Outagamie County Jail

The court will not allow the plaintiff to proceed against the Outagamie County Jail. Section 1983 prohibits "persons" acting under color of state law from violating someone's civil rights. A county jail is not a person. It is a subdivision of the county. A county jail is not a "suable entity" under §1983. See Smith v. Knox Cty. Jail, 666 F.3d 1037, 1040 (7th Cir. 2012). It is possible to sue a government unit (rather than a person) under §1983, if the plaintiff alleges that the government entity had a "policy or custom" of violating a person's civil rights. Monell v. Dep't of Soc. Serv's of City of New York, 436 U.S. 658, 694 (1978). If the plaintiff believes that Outagamie County had such a policy or custom, he needs to make that allegation against the county.

   2. Aramark

The plaintiff has also named Aramark, a private corporation that provides food services to a variety of industries. See https://www.aramark.com. For the purposes of §1983, a private corporation is not a "person." Nor is it a government official or employee. For a plaintiff to state a §1983 claim against a private entity, the plaintiff "must show that the private entity acted under the color of state law." Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 822 (7th Cir. 2009); see also, Rice *ex rel.* Rice v. Correctional Medical Serv's, 675 F.3d 650, 675 (7th Cir. 2012) (citing Monell, 436 U.S. at 690-91). "At its most basic level, the state action doctrine requires that a court find such a 'close nexus between the State and the challenged

action' that the challenged action 'may be fairly treated as that of the State itself.'" Id. at 823 (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1999)). And, just as with a government unit, the plaintiff must show that even if the private entity can be considered a state actor, it denied his rights as part of an official policy or custom. Id. (citations omitted). "An official policy or custom may be established by means of an express policy, a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." Id. (citations omitted).

While the plaintiff does not say so, it appears that the jail contracted with Aramark to provide inmate meals. The plaintiff alleges that Aramark refused to provide him with Halal meals, and gave him vegan meals instead. He alleges that this happened numerous between January 24 and April 6, 2018 (the date he filed his complaint). At this early stage, the court concludes that the plaintiff has alleged that Aramark established a pattern of giving him vegan meals, instead of Halal meals.

The plaintiff has alleged that by providing him vegan meals instead of Halal meals, Aramark violated his First Amendment right to freely exercise his religion. Prison inmates retain their free exercise right, "although that right is not unfettered." Ortiz v. Downey, 561 F.3d 664, 669 (7th Cir. 2009). "Prison officials may restrict inmate's ability to practice his faith so long as the restriction is reasonably related to a legitimate penological interest." Id. (citing,

e.g., Turner v. Safley, 482 U.S. 78, 89 (1987)). Such "legitimate" penological interests can include security and economic concerns. Id. (citation omitted). At this point, the plaintiff has alleged sufficient facts to support a claim that Aramark restricted his free exercise rights without a legitimate penological interest. Id. (concluding that allegation that defendants' denial of rosary and other items to Catholic inmate was sufficient to state a claim, without any evidence in the record of a legitimate penological interest); see also Thompson v. Holm, 809 F.3d 376, 379-80 (7th Cir. 2016) (denial of meal bags during Ramadan substantially burdened prisoner's free exercise rights).

The plaintiff's allegations also imply that Aramark violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc–1(a). RLUIPA prohibits prisons that receive federal funds from imposing a substantial burden on a prisoner's religious exercise unless the burden furthers a compelling governmental interest and does so by the least restrictive means. See 42 U.S.C. § 2000cc–1(a); Koger v. Bryan, 523 F.3d 789, 796 (7th Cir. 2008).

The plaintiff has *not* stated sufficient facts to support an equal protection claim, because he has not alleged that Aramark treated him any differently from other inmates. See Cardenas v. Washington, 12 Fed. App'x 410, 412 (7th Cir. 2001).

The plaintiff also has not stated sufficient facts to allow him to proceed against Aramark on an Establishment Clause claim under the First Amendment. A state actor's practice or policy "violates the Establishment

9

Clause if (1) it has no secular purpose, (2) its primary effect advances or inhibits religion, or (3) it fosters an excessive entanglement with religion." Nelson v. Miller, 570 F.3d 868, 881 (7th Cir. 2009). The plaintiff has not alleged any of these things.

The court will allow the plaintiff to proceed against Aramark on a First Amendment free exercise claim and a RLUIPA claim.

   3. Thomas Hare, Lt. Verheyen, Jenny Doe and Michelle Hare

The complaint alleged that Thomas Hare, "the kitchen manager for Aramark," never responded to any of the plaintiff's requests, and "continued to send vegan meals to" the plaintiff. Dkt. No. 1 at 4-5. While this allegation is thin on details—did the plaintiff make requests directly to Hare? Does he know that Hare received his complaints?—the court will, at this early stage, allow the plaintiff to proceed against Hare on First Amendment free exercise and RLUIPA claims.

The complaint alleged that in February 2018, when Aramark started giving him Halal meat four times a week, he got a letter from Lt. Verheyen. Dkt. No. 1 at 4. Verheyen told the plaintiff that he did not think that vegan meals violated Halal. Id. The plaintiff said that he tried to show Verheyen several chapters of the Qur'an, proving that he was supposed to be eating meat, but Verheyen never came to look at the chapters. Id. The plaintiff also alleged that he wrote to Verheyen on March 26, 2018, asking him "one last time" to giving him a Halal diet; as of the time the plaintiff filed his complaint, Verheyen did not respond. Id. at 5. For the reasons stated above regarding Aramark, the

court will allow the plaintiff to proceed on First Amendment free exercise and RLUIPA claims against Verheyen.

The plaintiff has made no specific allegations against defendants Jenny Doe and Michelle Hare, the two defendants he added in his April 18, 2018, Amendment. To state a §1983 claim against an individual, a plaintiff must show "personal involvement in the alleged constitutional deprivation." Colbert v. City of Chi., 851 F.3d 649, 657 (7th Cir. 2017) (quoting Minix v. Canarecci, 597 F.3d 824, 844 (7th Cir. 2010)). The plaintiff must show that there is a "causal connection between (1) the sued officials and (2) the alleged misconduct." Id. (citing Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 2983)). If the plaintiff wants to pursue claims against Jenny Doe and Michelle Hare (or any other employees of the Outagamie County Jail or Aramark), he must explain what they did to violate his civil rights.

The court will give the plaintiff an opportunity to amend his complaint regarding Jenny Doe and Michelle Hare. The court is enclosing a copy of its complaint form and instructions. The plaintiff should write the word "AMENDED" in front of the word "COMPLAINT" at the top of the first page, and then put the case number for this case—18-cv-540-PP—in the field for "Case Number." He must list all the defendants in the caption of the complaint. He must use the spaces on pages two and three to allege the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. In this section, the plaintiff should provide the court with enough facts to answers to the following

questions: 1) Who violated his rights? 2) How did each person violate his rights? 3) Where did each person violate his rights? and 4) When did each person violate his rights? This section of the complaint does not need to be long, or to contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did to violate the plaintiff's rights. If the space is not enough, the plaintiff may use up to five additional sheets of paper (putting page numbers on each additional page).

The amended complaint takes the place of the prior complaint, and must be complete, standing alone. The plaintiff cannot simply say, "Look at my first complaint for further information." See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1056-57 (7th Cir. 1998).

If the plaintiff files the amended complaint by the deadline the court has set below, the court will screen it under 28 U.S.C. §1915A.

### III. Motion for Preliminary Injunction (Dkt. No. 10)

On May 29, 2018, the plaintiff filed a motion for preliminary injunction. Dkt. No. 10. He asked the court to (1) order the jail to provide Halal or Kosher meats for Muslims as often as they serve meat to Christians, Natives, and other ethnicities; (2) prohibit Aramark from putting "Haram/forbidden" items on Halal trays; (3) order the jail and Aramark to stop forcing Muslim inmates to adhere to a vegan diet; (4) order the jail to stop treating Muslims unfairly; and (5) to prohibit Aramark worker Thomas Hare from making comments about the plaintiff's requests. Id. at 1-3. The plaintiff stated that he feared that the jail

and Aramark would retaliate against him, not only because of his religious beliefs and practices, but also because of this suit against them. Id. at 3.

A party seeking a preliminary injunction must demonstrate that he is reasonably likely to succeed on the merits, that he will experience irreparable harm if the court does not grant the injunctive relief he requests, that he does not have an adequate remedy at law, and that the injunction would not harm the public interest. Christian Legal Soc'y v. Walker, 453 F.3d 853, 859 (7th Cir. 2006). "If the moving party meets this threshold burden, the district court weighs the factors against one another in a sliding scale analysis . . . which is to say the district court must exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied. Id.; see Joelner v. Vill. of Wash. Park, 378 F.3d 613, 619 (7th Cir. 2004).

The court first notes that although the plaintiff was in the Outagamie County Jail when these events happened, he is no longer there. The Wisconsin Department of Corrections Inmate Locator service shows that on August 27, 2018, the plaintiff was transferred to Dodge Correctional Institution. https://appsdoc.wi.gov/lop/detail.do. Given this, the plaintiff cannot demonstrate that he will suffer irreparable harm from the defendants in the future, particularly his concern that the defendants would retaliate against him for filing this suit.

Even if the plaintiff remained at the Outagamie County Jail, he would not be able to demonstrate that he had no adequate remedy at law. The traditional remedy at law is money damages. See, *e.g.*, Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc., 549 F.3d 1079, 1095 (7th Cir. 2008). If the plaintiff wins this lawsuit, he can obtain money damages for any constitutional violations the defendants committed between April and August of 2018.

For these reasons, the court will deny the plaintiff's motion for a preliminary injunction.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's motion for extension of time to pay filing fee. Dkt. No. 7.

The court **DENIES** the plaintiff's motion for preliminary injunction. Dkt. No. 10.

The court **ORDERS** that Outagamie County Jail is **DISMISSED** as a defendant.

The court **ORDERS** that the plaintiff shall file an amended complaint that complies with the instructions in this decision. The plaintiff shall file the amended complaint in time for the court to receive it by the end of the day on **Friday, October 12, 2018**.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $348.98 balance of the filing fee by collecting monthly payments from the trust account in an amount equal to 20% of the preceding month's income credited to the account and forwarding payments to the clerk of court each time the amount in the account exceeds $10, in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of Dodge Correctional Institution.

The court **ORDERS** the plaintiff to mail all correspondence and legal material to:

>  Office of the Clerk
>  United States District Court
>  Eastern District of Wisconsin
>  362 United States Courthouse
>  517 E. Wisconsin Avenue
>  Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other

information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 5th day of September, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
United States District Judge**